Parker, C. J.
By the answers of Burroughs, the cashier of the Union Bank, it appears that Chandler, the debtor sued in this action, being indebted to the bank, transferred to him fifty shares in the stock of the New England Marine Insurance Company, according to *231 a written assignment annexed to the answers; and ten shares :n the stock of that bank, by writing his name on the back of the certifi cotes of the stock, and placing them in the hands of Burroughs. By the written assignment of the insurance stock, and by the endorsement of the bank certificates, it does not appear that these transfers were conditional, or intended only as security for the debt due to the bank; but, by the disclosure of Burroughs, it appears that such was the intention, and that it was agreed that both species of stock should be held by him until the directors of the bank should order it sold; and that, after paying the debt to the bank, the surplus, if any, .should be paid over to Chandler, the debtor.
If this transfer may be considered as made to the banking corporation, it is plain that Burroughs cannot be considered as the trustee of Chandler; and as a corporation cannot be charged as trustee under our statute, the other creditors could have no remedy against the property, unless they could vacate the transfer on the ground of fraud. But we think it clear that the transfer is not to the bank, notwithstanding Burroughs is styled in the writing cashier, and the transfer was intended to be made to him in that capacity. For it is obvious, from the facts disclosed, that Burroughs himself was to be the depositary, for the benefit of the bank and of Chandler; and he is called cashier merely for the purpose of designating the person by an appropriate addition. He alone had the legal control of the stock, and could give title to it by an assignment; and although a sale of it by him, without authority from the directors * of the bank, would be a violation of duty towards [ * 278 ] the corporation, yet a purchaser, ignorant of his trust, would hold the legal title to the property.
It was said in the argument, that this is the usual course of giving security to banks, and that it has always been considered that the property thus transferred vested in the corporation ; and further, that to decide otherwise will be to expose banks to loss, in case their officers should commit a breach of trust or should die insolvent. These consequences, it is true, may be apprehended ; but they can be guarded against by adopting another course; and it is for these and all other corporations to conform to the law, not for the law to bend to their convenience.
Considering Burroughs, then, as the person to whom the assign ment was made, is there any objection to his being charged as the trustee of Chandler for any surplus in his hands, after discharging the debt due to the bank ? We see none. He has, by his own declaration, shown that he has no personal interest in the property, and that he accepted the deposit with the special trust that he should hold it as security for the bank, until sold by order of the *232 directors, and that he should pay over the excess to the defendant. This excess, whatever it may be, ought to go to the use of the defendant’s creditors, and the creditors in this suit have acquired the light to it by their vigilance.
To hold otherwise would be to permit a debtor to conceal his property in the hands of a friend, and receive the profits of it. To prevent this was the object of the legislature, in providing this process. Burroughs has stated the value of the property, and admits that this, with other money in the bank belonging to the defendant, and which is holdeii for his debt, will much exceed the demand of the bank against him.
The plaintiffs in the present action, however, expect to charge Burroughs as trustee for the whole amount of property in his hands, on the ground that the transfer was fraudulent against [ * 279 ] creditors and void. This they infer *from the circumstance that the assignment to Burroughs is on the face of it absolute and unconditional; whereas the true intent of the parties was that it should be conditional, and merely operate as a pledge or security to the bank.
In the case of a bill of sale, or other conveyance of property, apparently absolute, proof of any secret trust or agreement, inconsistent with the tenor of the agreement, is undoubtedly evidence of a fraudulent bargain made for the purpose of defeating or delaying creditors. This is mentioned in Twyne’s case, as one of the badges of fraud. But it is not fraud in itself, or conclusive evidence of fraud, unless in the conveyance of real estate, where every, thing affecting the title ought to be in the deed itself, or in some instrument of as high a nature as the deed of conveyance.
By the facts disclosed in the present case, every idea of fraud in the cashier, or in the bank, is repelled. The object was a fair one, to obtain payment of a just debt; and although the business was managed indiscreetly, it does not appear that there was any desire to conceal from the other creditors of the defendant the true condition of the property. The trust in Burroughs was for honest purposes, and there is no good reason why it should not be executed ; especially as we see no difficulty in enabling the other creditors to avail themselves of the property intrusted, after it shall have answered the purposes for which it was transferred. We find that it is usual, especially with banks, to secure themselves by taking an assignment of personal property, without formal stipulations in writing, relative to the disposition of the property. And this practice tends to show that no fraud was intended.
In the case of Stevens & Al. vs. Bell (1), it was deliberately set *233 tied, that a debtor might convey all his effects to his creditors, or to any person for their use, or to any of them which he should prefer, such creditors consenting to * such con- [ * 280 J veyance; iind that, if there was a surplus resulting to the debtor, this might be secured by attachment, by such creditors as were not provided for.
This principle regulates the present case. Burroughs was the agent or trustee, to receive the property and pay the bank, which was a preferred creditor; the bank having consented to the transaction, as is abundantly evident from the disclosure. The present plaintiffs have attached the surplus, in the only way in which it could be attached; it being lawfully in the hands of the trustee.
The action must be continued, in order that the trustee may complete the execution of the trust, by selling the property and paying the debt due to the bank; and at the next term he will be able to show for how much he is chargeable in this suit.
With respect to the money deposited in the bank by the defend ant, the cashier cannot be considered the trustee; nor for the dividends upon the stocks, they having been applied according to his undertaking with the defendant. But the money deposited being at the disposition of the bank, that must go to the payment of the defendant’s debt to them in the first place, and they may resort to the stock pledged for the residue.

 6 Mass. Rep, 339.