### JOHN S. WILLARD v. JOEL LULL.

Where a sleigh, in an unfinished state, was in the shop of a painter, who was to finish it by a time specified, and the owner of the sleigh went to the shop with the plaintiff and there sold the sleigh to the plaintiff at a price agreed upon, and no payment was made, and the sleigh was not then actually delivered to the plaintiff, but it was agreed that the sleigh, when finished, should be delivered to the plaintiff, and the painter, who was present, was directed to deliver the sleigh, when finished, to the plaintiff, and agreed to do so, it was held that the plaintiff might maintain trespass against the defendant, a sheriff, who attached and took away the sleigh, before it was finished, upon a writ of attachment against the vendor.

TRESPASS for taking and carrying away a sleigh; the action came into the county court by appeal from a justice of the peace. Plea, the general issue, and trial by jury.

On trial, the plaintiff introduced testimony, which was not contradicted by the defendant, and which tended to prove the following facts. On Saturday, January 23, 1841, the sleigh in question was in the shop of one Ira Ayres, in Hartland, in the process of painting, having been left there for that purpose by Ed. Willard, the owner. Ayres had agreed to paint and varnish the sleigh for said Willard, and had, at that time, completed all but the varnishing. On said Saturday the plaintiff and Ed. Willard came together to Ayres' shop, where the sleigh was, and Ed. Willard then agreed to sell, and the plaintiff to purchase the sleigh, at a price agreed upon. No payment was made by the plaintiff, nor was the sleigh actually delivered; but it was agreed, that, when the sleigh was varnished, it was to be delivered to the plaintiff. Ayres was present at the time of the trade, and was directed to deliver the sleigh, when it was finished, to the plaintiff, and agreed to do so, and have it finished the then next Monday. There was no other proof of any delivery.

On the Monday next following, (being January 25th,) the defendant, as sheriff, went to Ayres' shop and attached the sleigh, as Ed. Willard's property, on a writ which he then held against him, and appointed Ayres keeper for him, and directed him to let no one have the sleigh, but to inform all that it was under said attachment; and Ayres agreed to do so, but at the same time informed the defendant that

Willard v. Lull.

the plaintiff had purchased the sleigh.  On the next day, Tuesday, Ayres informed the plaintiff of the attachment; and afterwards, on the same day, the plaintiff and Ed. Willard came to the shop,—Ayres being out, and his hired man being at work upon the sleigh,—and drew the sleigh out upon the platform of the shop, and talked of going to the blacksmith's shop for some irons; when the hired man of Ayres told them that they had better put the sleigh back into the shop,—and they did so.  Immediately after, the defendant came in, and said to the plaintiff, who was then sitting upon the sleigh and had hold of it, " I understand you are going to take away my sleigh." The plaintiff replied, claiming the sleigh as his own.  The defendant claimed it by virtue of the attachment, and forcibly took it from the plaintiff and drew it away.

The defendant's counsel requested the court to instruct the jury, that the plaintiff's testimony did not show a sale, completed by delivery, or possession, sufficient to entitle the plaintiff to recover in this action.  But the court refused so to charge, but directed the jury to return a verdict for the plaintiff for the value of the sleigh. Exceptions by defendant.

*E. Hutchinson* for defendant.

The defendant was entitled to the instructions asked for below, in two points of view.  First, The plaintiff's proofs did not entitle him to maintain *trespass* as against a stranger.  Secondly, The plaintiff's claim is that of a pretended purchaser against an attaching creditor of his vendor.  And the objection to the plaintiff's right to recover is, in either view of the case, perfectly good, upon authority, under the general issue.

1.  The plaintiff, to maintain this action, was bound to show that, at the time of the taking complained of in his declaration, he had either the actual, or constructive, *possession* of the sleigh, and had also either a general, or qualified, *property* therein.  If any authority is necessary, we cite *Brainard et al.* v. *Burton et al.*, 5 Vt. 98.  Whereas the facts in the case show in him no such possession, nor property.  The taking by the defendant, (or trespass, if such it was,) was on Monday the 25th day of January.  Immediately upon the seizure, on that day, and the appointing of the keeper, the possession was, in law, in the defendant, as sheriff.  He be-

came immediately thereupon liable to an action of trespass, had he acted without authority, and could from that moment have maintained trespass for any illegal interference with his possession. Up to that time the general property, as well as the constructive possession, was in Ed. Willard. The plaintiff had not even a qualified property in the sleigh, and had never had possession. Treating the transaction as *bona fide*, it was a mere executory contract for a thing unfinished and in the process of manufacture, before it had existence in the form, in which it was contracted to be delivered, and "when nothing passes by the contract until it has such existence and is *actually delivered.*" *Mucklow et al.* v. *Mangles*, 1 Taunt. 319. *Brainard et al* v. *Burton et al.*, 5 Vt. 99.

In the present case it was not left to implication, but, by the *express* terms of the contract, no delivery was to be made until after the sleigh should be completed. It was not completed, when attached; consequently the time had never arrived, when the plaintiff was entitled to take possession. Having had, therefore, no property, nor possession, nor right of possession, at the time of the taking, the plaintiff cannot maintain trespass, even as against one acting without pretence of authority.

2. But more especially do the plaintiff's proofs fall short of sustaining this action, when his claim is viewed as in opposition to that of an attaching creditor of his pretended vendor. And that view of the case is proper, upon the proofs put in, notwithstanding there is no plea but the general issue. In trespass a defendant "is not obliged to justify specially unless he is *prima facie* a trespasser." *Badkin* v. *Powell*, Cowper 478. The taking was not from the plaintiff's actual possession;—therefore, *prima facie*, no trespass upon him;—which drives him to prove *property* in himself. And it is an invariable rule, that a defendant, under the general issue, may *disprove* any and all facts, which the plaintiff is bound to prove, to maintain his action. *Brainard et al.* v. *Burton et al.*, 5 Vt. 100. *Merritt* v. *Miller*, 13 Vt. 418.

The taking, then, is to be regarded as having been by virtue of process;—and, viewed in that light, the case does not fall at all within the principles of the decision in *Barney* v. *Brown*, 2 Vt. 377. There "every thing was done which was necessary to complete the sale and vest the property in the plaintiff." In that case

Willard *v.* Lull.

the plaintiff paid a valuable consideration;—the property was in existence, in a finished state, susceptible of immediate delivery;—by the terms of the contract it was to be delivered forthwith;—there was a delivery in fact,—for the person, in whose keeping the sheep were, was directed and agreed to, and did in fact, select and mark and commence keeping them solely and exclusively for the purchaser, before the attachment;—in short, nothing remained to be done, in order to divest the vendor of all property and possession, and to vest the whole property and legal possession in the purchaser. In the present case, " something remained to be done on the ' part of the seller, as between him and the buyer, before the com- ' modity purchased was to be delivered;—and a complete present ' right of property had not attached in the buyer."—See *Hanson et al.* v. *Meyer*, 6 East. 614. No consideration was paid, and no term of credit was agreed upon. Ed. Willard could have rescinded the pretended contract at any time before the sleigh was finished and delivered, for the non-payment of the purchase money, or the insolvency of the plaintiff. *Wallace v. Breeds*, 13 East. 522. *Shepley* v. *Davis*, 5 Taunt. 621. Had the sleigh been destroyed by fire, or other casualty, at the time of the attachment, it would, *even as between the plaintiff and Ed. Willard*, have been held " no delivery,"—and the plaintiff would not have been, in law, responsible to him for the stipulated price,—but the loss would have been Ed. Willard's. *Rapelye* v. *Mackie*, 6 Cow. *per* Woodworth, J., 253-4. Much less can the sale, (even if *bona fide*,) be regarded as complete, *as against an attaching creditor of Ed. Willard's*, within the principles of any decision in this state.

*Tracy & Converse* for plaintiff.

1. It can hardly be pretended but that the property in the sleigh became vested in the plaintiff immediately upon the purchase. It was at his risk. The vendor could sue for and recover the pay immediately upon the sale. Ayres was to deliver the sleigh as soon as it was varnished, to which he assented. Can there be any doubt who should bring the suit, in case Ayres should have converted the property? 1 Swift's Dig. 380. *Whithouse* v. *Frost*, 12 East 613. *Lucas* v. *Dorrien*, 7 Taunt. 278. *Barney* v. *Brown*, 2 Vt. 374. *Harding* v. *Janes*, 4 Vt 462. *Chappel* v. *Marvin*, 2 Aik. 79.

2.   But it is insisted that there is not such a delivery in this case, as to protect it from attachment by the creditors of the vendor. This question, we contend, is fully settled, in this state, by several adjudged cases.  *Barney* v. *Brown,* 2 Vt. 374.  *Harding* v. *Janes,* 4 Vt. 462.  *Spalding* v. *Austin,* 2 Vt. 555.  *Pierce* v. *Chipman,* 8 Vt. 334.

The opinion of the court was delivered by

WILLIAMS, Ch. J.   The only question in this case is, whether the sleigh became the property of the present plaintiff; as there is no question made as to any actual fraud between the plaintiff and Ed. Willard.   We think that the contract between the plaintiff and Ed. Willard was complete and perfected at the shop of Ayres, on the 23d day of January, that the property then passed to the plaintiff, and that Ed. Willard was entitled to the price as soon as the painting was finished.   All that was to be done thereafter was to be done by Ayres, and nothing by Ed. Willard.   The case of *Tilden v. Brown,* 14 Vt. 164, was much considered, all the authorities which have been read in this case were then examined, and the result to which the court arrived must govern the case.

In relation to possession, the direction to Ayres and his agreement constituted him the agent for the plaintiff, and his possession was the plaintiff's possession, and, according to the principle established in relation to the sale of property in possession of a third person, who is notified and agrees to keep the same for the vendee, this sleigh was not liable to be attached for the debts of Ed. Willard. When the defendant attached the sleigh, he still left it in the custody of Ayres, and his directions to Ayres could not, by a *quasi* attornment, change the character in which he held the sleigh, as bailee of the plaintiff, to a bailee of the defendant.   The plaintiff actually had the custody and possession of the sleigh, when it was forcibly taken from him by the defendant.   It appears to us, therefore, that the plaintiff had a perfect title to the property in dispute, by sale, by delivery, and by actual possession.

The judgment of the county court is therefore affirmed.