## Joel Bruce *vs.* Marshall S. Priest.

In an action to recover damages for an assault and battery, committed by the son of the owner of a house, upon one who had wrongfully intruded into the same, but, in compliance with orders given to him, had left the house and was going away, evidence is incompetent to prove, in mitigation of damages, that the plaintiff was of bad repute in the community, and was accompanied by his paramour, who was also of bad repute in the community; although the plaintiff's counsel, in opening his case, and throughout the trial, has claimed damages on the ground that the assault and battery were an indignity, calculated to injure the plaintiff's standing and reputation in the community.

Tort to recover damages for an assault and battery.

At the trial in the superior court, before *Morton,* J., there was evidence tending to show that, on Thanksgiving day, 1861, the plaintiff, with a woman who lived with him as his wife, but *to* whom he was not married, entered the house of the defendant's father, who was aged and infirm, and between whom and the plaintiff difficulties existed, and, after some unfriendly conversation, the defendant ordered the plaintiff and the woman to leave, and afterwards, this order having been complied with by the woman but not by the plaintiff, the defendant left the room, and the defendant's father, who was present, told the plaintiff that " he had better go," whereupon the plaintiff left the house, and, after he had got a few feet from the door, towards the highway, the defendant came towards him from the direction of an outbuilding with a whip in his hand, and afterwards struck him several blows, under circumstances respecting which the evidence was conflicting.

The defendant, for the purpose of showing the circumstances of provocation under which the assault was committed, and *in*

mitigation of damages, was allowed to introduce evidence, under objection, to show that the general reputation of the plaintiff, and of the woman by whom he was accompanied, for moral worth and integrity, was bad.  The plaintiff's counsel claimed, in opening his case, and throughout the trial, that the assault and battery were a great indignity, calculated to degrade and injure his standing and reputation in the community; and the evidence of his and the woman's bad reputation was relied upon by the defendant only in mitigation of damages, and to show that he could not have sustained any considerable damage on that ground.

The jury returned a verdict for the plaintiff, with $73 damages, and he alleged exceptions.

*G. A. Torrey,* (*N. Wood* with him,) for the plaintiff, cited 1 Greenl. Ev. §§ 52, 54, 55; 2 Ib. §§ 93, 269; *Brown* v. *Gordon,* 1 Gray, 182; *Ross* v. *Lapham,* 14 Mass. 275; *Avery* v. *Ray,* 1 Mass. 12; *Corning* v. *Corning,* 2 Selden, 104; *Willis* v. *Forrest,* 2 Duer, 310; *Givens* v. *Bradley,* 3 Bibb, 195; *Smithwick* v. *Ward,* 7 Jones Law R. (N. C.) 64; *McKenzie* v. *Allen,* 3 Strobh. (S. C.) 546.

*P. C Bacon & J. T. Joslin,* for the defendant, cited *Avery* v. *Ray,* 1 Mass. 12; *Lee* v. *Woolsey,* 19 Johns. 319; *Ellsworth* v. *Thompson,* 13 Wend. 663; *Robinson* v. *Fitchburg & Worcester Railroad,* 7 Gray, 96; *Leonard* v. *Allen,* 11 Cush. 245; *Stone* v. *Varney,* 7 Met. 89; *Bodwell* v. *Swan,* 3 Pick. 376; *Larned* v *Buffinton,* 3 Mass. 551.

BIGELOW, C. J.   We are unable to see any plausible reason for holding that evidence of the bad reputation of the plaintiff, and of the woman who accompanied him, for integrity and moral worth, was competent, as tending to prove provocation for the alleged assault, and in mitigation of the damages thereby occasioned.   Great latitude of proof should certainly be allowed in cases of this nature.   All the circumstances attending the assault, the language, gestures, looks and general deportment of the parties — everything, in short, which can properly be deemed *res gestæ,* may be laid before the jury.   All these are fairly in volved in the issue, and the parties are bound to be prepared

9 *

with proof concerning them. But beyond this they cannot be permitted to go. The character of the parties is in no way con cerned in the nature of the action. It is wholly a collateral matter, and if introduced would raise a false issue, entirely aside from the merits of the case. 1 Greenl. Ev. §§ 52, 55. 2 Ib. § 269. *Brown* v. *Gordon*, 1 Gray, 182. *Ross* v. *Lapham*, 16 Mass. 275. It is true that a defendant may show any legal provocation for the assault in reduction of the damages. But the fact that a man bears a bad character, or keeps company with persons of evil repute, furnishes no just provocation or pal- liation for doing violence to his person. He may forfeit the good opinion of his fellow men, and become an object of pity and contempt by reason of his evil habits and associations and want of moral worth; but we know of no principle of law or ethics on which for such a cause impunity is to be granted to those who inflict injuries upon another, or full indemnity is to be denied to a party for a violation of the sanctity of his person.

It was urged in behalf of the defendant, that evidence of the bad character of the plaintiff and his companion was admissible in connection with the facts which took place in the house pre- viously to the assault. But there are two answers to this sugges- tion. The first is, that those facts had no such connection with the assault as to form part of the *res gestæ*. When the assault was committed, the plaintiff had left the house, and thus re- moved any cause of provocation which his presence there had occasioned. *Lund* v. *Tyngsborough*, 9 Cush. 36. But the other and better answer is, that the motive which led the defendant to order the plaintiff to leave the house was wholly immaterial to the issue. He had a right to give such an order, and the plain- tiff was bound to obey it. After it was obeyed, it was quite immaterial to show that the character of the plaintiff was such as to render his presence in the dwelling of the defendant disa- greeable or intolerable, or that he had valid and sufficient rea- sons for removing him therefrom.

We are also inclined strongly to the opinion that the evidence was inadmissible on the other ground on which it was ruled to be competent at the trial. The plaintiff offered no evidence of

his good character for the purpose of enhancing the damages. Such evidence would have been of very doubtful competency, if it had been offered. But the mere statement or claim of his counsel that the assault committed by the defendant tended to degrade the plaintiff and injure his standing and reputation in the community did not render evidence of the plaintiff's bad character competent, in mitigation of damages. Counsel often make exaggerated and unfounded claims in behalf of their clients. These are to be corrected by countervailing statements by the adverse party, and by proper instructions from the court. But they do not afford sufficient ground for the admission of evidence which would be otherwise incompetent.

*Exceptions sustained.*