ELBRIDGE G. KNIGHT & another *vs.* JOSHUA E. BOWLEY & another & trustee.

Suffolk. March 18. — May 14, 1875. AMES & ENDICOTT, JJ., absent.

A person summoned as trustee in a process of foreign attachment, answered that when he received service of the writ he had in his hands a check payable to his order which he had received in payment of a vessel of which the principal defendants were part owners; that he received no instructions from the defendants in regard to the sale except that they signed the bill of sale and delivered it to him to be delivered to the purchaser; that on the day he received the check he agreed not to present it for payment until noon of that day; that after the service of the writ the check was presented and the proceeds received. *Held*, that he was not chargeable as trustee.

·TRUSTEE PROCESS. Writ dated July 14, 1874. Charles E. Morrison, summoned as trustee, answered, denying that at the time of service on him he had in his hands or possession any goods, effects or credits of the principal defendants, unless he

was chargeable upon the following facts : " The principal de-fendants were owners of a part of the steamboat George Shat-tuck, of which the trustee also owned a part. The trustee, act-ing for himself and the other owners of said steamboat, sold the same, and in payment therefor received, on the day of the service of said writ on him, the check of Williams & Hall for the sum of $19,849.75, about eleven o'clock in the forenoon, and the per-son delivering him said check requested him not to use the same until after half-past twelve o'clock of said day, which the trustee agreed to, and agreed that said check should not be presented before half-past twelve o'clock of said day. The trustee, before the service of the writ upon him, indorsed the check to his firm of C. E. Morrison & Co., as he did all the checks and funds of said steamboat and the business connected therewith, his said firm being the financial agents of said steamboat. His firm, after the service of the writ upon the trustee, deposited said check in a bank, and the proceeds of the same were passed to the credit of the firm. The principal defendants were entitled to $838.63 of the proceeds of said check after it was collected."

The trustee answered certain interrogatories as follows :

" I did not receive said check as cash, but I received it as pre-cisely what it was, a check. I received no specific instructions from the principal defendants as to how I should receive pay-ment for their share of said steamboat.

" I have no recollection of any instructions or authority that the defendants gave, further than that in common with the other owners, they executed the bill of sale which was delivered to me to deliver to the purchaser on completing the sale. I understood that the whole matter was placed in my hands by the owners to act according to my judgment, and that I would do what would be for their interest, which I did.

" There was never any formal appointment of my firm as such financial agents. From the time I became the acting manager of the boat my firm acted as the financial agents; that is, they re-ceived and paid out all the moneys that passed through my hands. The authority so to act was given by me by having that portion of the business done by them."

In the Superior Court the trustee was discharged; the plaintiff recovered judgment against the principal defendants, and ap-pealed from the order discharging the trustee.

*T. S. Dame*, for the plaintiff.

*A. S. Wheeler*, for the trustee.

MORTON, J.   The alleged trustee had in his hands a check of a third party payable to his order, which had not been paid at the time of the service of the plaintiff'ι writ, and which, by the terms on which he received it, was not then presentable.   He is not chargeable for this.   *Hancock* v. *Colyer*, 99 Mass. 187.

The plaintiffs claim that he is chargeable because he agreed not to present the check for payment until after twelve and a half o'clock of the day of its date.   If the effect of this agreement was to create a debt due absolutely to the principal defendants, the alleged trustee would be chargeable.   But he states in his answer that the defendants and other owners of the vessel placed the whole matter of the sale in his hands, to act according to his judgment.   The agreement for delay in presenting the check, therefore, was not a breach of his instructions or a violation of his duty, which would render him absolutely liable to the owners for the amount of the check.                 *Trustee discharged.*